# In the United States Court of Federal Claims

No. 21-1978 C
Filed Under Seal: January 20, 2022
Reissued: February 10, 2022[*]

| | |
|---|---|
| * * * * * * * * * * * * * * ** | * |
| | * |
| **FACILITY HEALTHCARE** | * |
| **SERVICES, INC.,** | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | * |
| **THE UNITED STATES,** | * |
| | * |
| Defendant, | * |
| | * |
| and | * |
| | * |
| **PEAK FACILITY SOLUTIONS,** | * |
| **LLC,** | * |
| | * |
| Defendant-Intervenor. | * |
| | * |
| * * * * * * * * * * * * * * ** | * |

*William M. Weisberg*, Law Offices of William Weisberg PLLC, of McLean, VA, for Plaintiff.

*Galina I. Fomenkova*, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, D.C., for Defendant, and *Jonathan S. Baker*, Attorney-Advisor, Contract Law Division, Office of General Counsel, Department of Commerce, of Washington, D.C., of counsel.

*John Ryan Prairie*, with *George E. Petel*, Wiley Rein LLP, of Washington, D.C., for Defendant-Intervenor.

---

[*]   Pursuant to the protective order entered in this case, this opinion was filed initially under seal.  The parties provided proposed redactions of confidential or proprietary information.  In addition, the Court made minor typographical and stylistic corrections.

<u>**MEMORANDUM OPINION AND ORDER**</u>

**SOMERS**, Judge.

This bid protest challenges the award of a contract to Peak Facility Solutions, LLC, ("Defendant-Intervenor" or "Peak") for the provision of services related to the operation and maintenance of the central utility plant and related facilities for National Institute of Standards and Technology ("NIST") campuses in Colorado and Hawaii.  ECF No. 1 at 4 ("Compl.").  Plaintiff, Facility Healthcare Services, Inc.,[1] asserts that NIST failed to conduct meaningful discussions with it regarding its price proposal prior to awarding the contract at issue to Defendant-Intervenor.  For the following reasons, the Court grants in part the government's motion to dismiss, as well as grants in part the government's and Defendant-Intervenor's motions for judgment on the administrative record.

**BACKGROUND**

On March 10, 2020, NIST issued Request for Proposal No. 1333ND20RNB190010 ("RFP") for "[o]ne firm-fixed-price contract" for the maintenance and operation of facilities at NIST campuses in Colorado and Hawaii.  AR 222.  Plaintiff has performed maintenance services on these campuses for over ten years, most recently under a contract that ended on June 24, 2020.  *See* AR 5.  Plaintiff is currently maintaining the relevant facilities on these campuses under a series of bridge contracts.  *See* Compl. at 1.

The procurement at issue is a best value procurement, with non-price/technical factors being about equal in importance to price.  AR 232.  The technical factors include: (1) past performance; (2) organization, management, and key personnel; and (3) technical approach.  AR 232-33.  In terms of price, the RFP provided that NIST would evaluate offerors' proposed prices by comparing them with: (1) one another; (2) the independent government cost estimate; or (3) available historical information.  AR 234.

Initially, NIST received five proposals, all of which it deemed technically unacceptable.  AR 1472.  Moreover, NIST determined that the price in Plaintiff's first proposal as neither fair nor reasonable "in comparison with the [independent government estimate] and competitive price offers." *Id.*  Thus, the contract was unawardable at that time, and NIST proceeded to establish a competitive range that included all five offerors and opened discussions with them "to give the offerors the opportunity to address weaknesses, significant weaknesses and deficiencies to bring the proposals to a satisfactory or higher level . . . ."  AR 1524.  NIST further provided that "offerors may also make price revisions." *Id.*

Plaintiff received its initial discussion letter on February 21, 2021, detailing the weaknesses and significant weaknesses NIST identified in its proposal for the non-price/technical factors.  AR 1849-50.  The letter also noted that "[Plaintiff's] price proposal . . . is

---

[1] Although Plaintiff captioned its complaint as being brought by "Facilities Health Care Services," the Court believes that the complaint was in fact brought by "Facility Healthcare Services."  *See* AR 260; *see also* FACILITY HEALTHCARE SERVS., http://www.fhcare.com/services html (last visited Jan. 13, 2022).  The caption has been adjusted accordingly.

significantly higher than the Government Estimate" and asked that Plaintiff "review the price proposal to ensure it is consistent with the technical proposal and ensure there are no errors." AR 1852.

On March 5, 2021, Plaintiff submitted a revised proposal, which, among other things, included a minor price reduction. *See generally* AR Tab 19. After reviewing the revised proposal, NIST once again informed Plaintiff via letter that its price was still "significantly higher than the Government Estimate." AR 2767. Plaintiff submitted its final proposal on March 31, 2021, without changing its proposed price. *Compare* AR 2104 *with* AR 3010.

The source selection evaluation board ("SSEB") evaluated the final proposals from the five offerors and rated them from first to last:

| OFFEROR | TECHNICAL / NON-PRICE PROPOSAL | | | OVERALL TECHNICAL | TOTAL PRICE ($) | Ranking |
| | A<br>Past<br>Performance | B<br>Organization,<br>Management &<br>Key Personnel | C<br>Technical<br>Approach | | | |
|---|---|---|---|---|---|---|
| Peak Facility Solutions, LLC (PFS) | Neutral | Good | Good | Good | $ 11,101,079.52 | 1st |
| [Offeror No. 2] | Neutral | Good | Good | Good | $ 11,450,040.00 | 2nd |
| [Offeror No. 3] | Satisfactory | Good | Good | Good | $ 12,443,080.68 | 3rd |
| Facility Healthcare Services, Inc. (FHSI) | Good | Good | Good | Good | $ 16,624,584.00 | 4th (Tied) |
| [Offeror No. 5] | Satisfactory | Unacceptable | Good | Unacceptable | $ 10,296,504.00 | 4th (Tied) |
| | | | | IGE | $ 11,429,248.60 | |

AR 3612. The SSEB concluded that Defendant-Intervenor's proposal represented the best value to the government based, in part, on the fact that its price offer was the lowest from a technically acceptable proposal and the proposal had an overall technical rating of good. AR 3649. The SSEB also noted that "[n]either [Plaintiff's] higher past performance rating nor any particular features in [its] technical proposal justify the $5,523,504.48 (49.8%) price premium associated with [Plaintiff's] offer as compared with [Peak's] proposal, non-price and price factors considered." AR 3650.

On May 21, 2021, NIST awarded the contract to Defendant-Intervenor. *See* AR 3786. Plaintiff requested a post-award debrief, which occurred on May 26, 2021. *See generally* AR 4083-115. Shortly thereafter, Plaintiff filed a post-award bid protest with the Government Accountability Office ("GAO"). Facility Healthcare Servs., Inc., B-418743.2, B-418743.3, 2021 WL 4191923 (Comp. Gen. Sept. 2, 2021). GAO ultimately dismissed Plaintiff's protest, finding that NIST conducted adequate and meaningful discussions regarding the proposed price, and that Plaintiff was not an interested party able to raise challenges to the proposal's technical evaluation, as there were two intervening offerors with eligible proposals that NIST rated higher than Plaintiff. *See generally id.* Plaintiff then filed its protest in this Court on October 7, 2021. The parties filed cross-motions for judgment on the administrative record. ECF Nos. 19, 20, 21. Additionally, the government filed a motion to dismiss Plaintiff's complaint, arguing that Plaintiff has not established standing to protest the award because it does not have a "direct

3

economic interest." ECF No. 21 at 16-18. The Court has reviewed the pending motions and the administrative record, and the matter is now ripe for review.

## DISCUSSION

**A.    Plaintiff's Motion for Judgment on the Administrative Record Fails to Comply with RCFC 52.1**

Regardless of the merits of a protest, a protestor must comply with the Rules of this Court in making its case. Plaintiff's filings in support of its motion for judgment on the administrative record, however, fall irredeemably short of complying with the rule applicable to such motions. Rule 52.1 of the Rules of the United States Court of Federal Claims ("RCFC") provides that "a party may move for partial or other judgment on the administrative record and *must include in its motion or supporting memorandum a statement of facts that draws upon and cites to the portions of the administrative record* that bear on the issues presented to the court." RCFC 52.1(a) (emphasis added). Plaintiff entirely failed to comply with this clear requirement. Rather, in moving for judgment on the administrative record, Plaintiff stated that it "will not restate the factual background of its case, but rather rely upon the facts as set forth in the Complaint." ECF No. 19 at 4. The Rules do not permit such a laissez-faire approach.

Moreover, Plaintiff at *no point* in all of its briefing draws upon or cites, even a *single time*, any page or portion of the administrative record. The Court is perplexed as to how Plaintiff intends to succeed on a motion for judgment on the *administrative record*, without ever even citing the *administrative record*. A motion for "judgment on an administrative record is properly understood as intending to provide for an expedited trial on the record." *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005). Although "expedited," that "trial" is not so expedited that it includes no consideration of the factual (administrative) record before the Court. Moreover, it is not the Court's responsibility to scour the over 5,000-page-long administrative record in search of evidence that may or may not exist to advance Plaintiff's case. *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."). Instead, RCFC 52.1 requires, and the very nature of a motion for judgment on the administrative record necessitates, that Plaintiff direct the Court's attention to those portions of the administrative record that support its position. Plaintiff is mistaken if it believes that the Court's Rules are mere guidelines there for Plaintiff to follow as it sees fit, even if Plaintiff thinks ignoring them is in the "interests of brevity." *But see* PIRATES OF THE CARIBBEAN: THE CURSE OF THE BLACK PEARL (Walt Disney Studios Motion Pictures 2003) ("The Code is more what you'd call guidelines than actual rules.").

Plaintiff's chief argument for why it is entitled to judgment on the administrative record is that it allegedly did not receive the meaningful discussions regarding its price proposal to which it claims it was entitled under the Federal Acquisition Regulation ("FAR"). This is a mixed question of law and fact. Plaintiff makes the legal argument—that the FAR in certain circumstances requires meaningful discussions—but entirely fails to cite, much less draw upon, the administrative record as to whether any meaningful discussions actually occurred. As to the factual question of whether meaningful discussions occurred, the Court would be required to make "factual findings under RCFC [52.1] from the record evidence as if it were conducting a

trial on the record" in order to find in favor of Plaintiff. *Bannum*, 404 F.3d at 1357. Yet, Plaintiff does not point the Court toward *any* record evidence in support of such a conclusion.

The very brief factual recitation in Plaintiff's motion fails not only to draw upon the administrative record but contains only one citation that, unhelpfully, is to Plaintiff's complaint. The complaint, of course, was written and filed before Plaintiff's counsel had access to the administrative record and thus does not contain any record evidence. Instructing the Court to go look at the complaint if it is interested in the facts of the case is not the most advisable approach to advocacy, even were this a motion to dismiss or for summary judgment. It is completely unacceptable, however, to fail to cite to the administrative record when moving for judgment *on* the administrative record, especially when the key factual question is in dispute.

RCFC 41(b) permits the Court to dismiss the case with prejudice for Plaintiff's failure to comply with the Rules. Although the Court should probably put no more effort into examining this case than Plaintiff's counsel did in pointing the Court towards evidence in the administrative record to support Plaintiff's claims, the Court will not take such a draconian approach.

**B.      Plaintiff Has Not Demonstrated That Its Discussions with NIST Were Inadequate**

Although Plaintiff failed to draw upon, or even cite to, the administrative record in support of its adequacy of discussion argument, the Court will nonetheless address the merits of this claim.[2] Plaintiff, citing FAR 15.306(d)(3), argues that NIST failed to conduct meaningful discussions with Plaintiff regarding its price proposal because NIST's discussion with Plaintiff did not explain the "actual import of [its] price exceeding the government estimate." *See* ECF No. 19 at 5-10. Plaintiff misses the mark with this argument.

To review, in a bid protest, the relevant inquiry is whether NIST's action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . ." 5 U.S.C. § 706; *see also* 28 U.S.C. § 1491(b)(4) ("In any action under this subsection, the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5."). Regarding meaningful discussions, FAR 15.306 states, in relevant part:

> At a minimum, the contracting officer must, subject to paragraphs (d)(5) and (e) of this section and 15.307(a), indicate to, or discuss with, each offeror still being considered for award, deficiencies, significant weaknesses, and adverse past performance information to which the offeror has not yet had an opportunity to

---

[2] Although it is a close call, it appears that Plaintiff has standing to bring its meaningful discussions claim. Clearly, Plaintiff is an actual bidder for this contract. *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1359 (Fed. Cir. 2009) ("[T]o come within the Court of Federal Claims's § 1491(b)(1) bid protest jurisdiction, [plaintiffs are] required to establish that it (1) is an actual or prospective bidder and (2) possess[es] the requisite direct economic interest.") (citations and internal quotations omitted). While Plaintiff's proposal tied for fourth place, Plaintiff has sufficiently—for the purpose of standing—alleged that had it received adequate discussions, Plaintiff could have further lowered its proposed price. Compl. ¶ 24; *but see* ECF No. 21 at 17-18. Thus, the Court believes that for the limited purpose of challenging the alleged lack of meaningful price discussions, Plaintiff has a direct economic interest in this procurement and, therefore, standing for its price-related claim. *See Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1308 (Fed. Cir. 2006)) ("To prove a direct economic interest as a putative prospective bidder, [the bidder] is required to establish that it had a 'substantial chance' of receiving the contract.").

respond.  The contracting officer also is encouraged to discuss other aspects of the offeror's proposal that could, in the opinion of the contracting officer, be altered or explained to enhance materially the proposal's potential for award.  However, the contracting officer is not required to discuss every area where the proposal could be improved.  The scope and extent of discussions are a matter of contracting officer judgment.

48 C.F.R. § 15.306(d)(3).  The FAR goes on to state:

Government personnel involved in the acquisition shall not engage in conduct that —

. . . .

Reveals an offerors price without that offeror's permission.  However, the contracting officer may inform an offeror that its price is considered by the Government to be too high, or too low, and reveal the results of the analysis supporting that conclusion.  It is also permissible, at the Government's discretion, to indicate to all offerors the cost or price that the Government's price analysis, market research, and other reviews have identified as reasonable (41 U.S.C. 2102 and 2107).

48 C.F.R. § 15.306(e)(3).

In short, the FAR *required* the contracting officer to indicate to, or discuss with, Plaintiff any deficiencies, significant weaknesses, and adverse past performance information to which Plaintiff had not had an opportunity to respond.  48 C.F.R. § 15.306(d)(3).  In addition, it also *permitted* the contracting officer to discuss with Plaintiff other aspects of its proposal that could be altered or explained to enhance its chance of award or to inform Plaintiff that its price was too high or too low.  48 C.F.R. §§ 15.306(d)(3), 15.306(e).  The problem for Plaintiff is that NIST twice informed Plaintiff that its price proposal was significantly higher than the government cost estimate.  Apparently, this warning was insufficient for Plaintiff.  Rather, Plaintiff asserts that NIST was required by the FAR essentially to spoon-feed it a directive that it would not be awarded the contract if it did not lower its price.  Unfortunately for Plaintiff, the FAR does not require such spoon-feeding.  *WorldTravelService v. United States*, 49 Fed. Cl. 431, 439-40 (2001) (citing *LaBarge Electronics*, Comp. Gen. B–266210, (1996)) (internal quotations omitted) ("[A]n agency [is not required] to spoon-feed an offeror as to each and every item that must be revised, added, or otherwise addressed to improve a proposal.").

To begin, although NIST did inform Plaintiff that its price was too high, it does not appear that the FAR required NIST to so inform Plaintiff.  The FAR only requires the contracting officer to indicate or discuss with an offeror deficiencies, significant weaknesses, and adverse past performance information.  Price, however, at least for purposes of the solicitation at issue, does not fit any of those categories.[3]  A deficiency is "a material failure of a proposal to meet a Government requirement or a combination of significant weaknesses in a proposal that

---

[3] The fact that price does not relate to "adverse past performance information" is self-obvious.

increases the risk of unsuccessful contract performance to an unacceptable level."  48 C.F.R. § 15.001.  And, a significant weakness is "a flaw that appreciably increases the risk of unsuccessful contract performance."  *Id*.  In other words, deficiency and weakness relate to the acceptability of aspects of a proposal when evaluated under an adjectival rating system.  Even if price could be adjectively rated, it was not so evaluated for this solicitation; instead, "[p]rice proposals [were] ranked from lowest to highest in price."  AR 234; *see also id*. ("The price proposal will be evaluated but not given an adjectival rating.").  In short, at least for this solicitation, price was not scored as a strength, weakness, significant weakness, or deficiency; rather, it was evaluated for reasonableness.[4]  Accordingly, as price was not a deficiency, significant weakness, or past performance information, NIST was not required to discuss price with Plaintiff under FAR 15.306(d)(3).

What is more, even if NIST was required to indicate or discuss price with Plaintiff, such an indication or discussion occurred.  "[T]here are very few affirmative requirements for discussions," *CRAssociates v. United States*, 102 Fed. Cl. 698, 716 (2011), and the discussions NIST and Plaintiff engaged in were more than adequate.  This procurement had two rounds of discussion letters: one after initial proposals and another following NIST's receipt of revised proposals.  *See generally* AR Tabs 18, 24.  In both of NIST's discussion letters to Plaintiff, NIST stated that Plaintiff's "price proposal . . . is significantly higher than the Government Estimate."  AR 1852, 2767.  Better yet, in the final discussion letter to Plaintiff, NIST provided specific line items that appeared "significantly higher than the Government Estimate."  AR 2767 ("CLINs 0001, 1001, 2001, 3001 and 4001 are significantly higher than the Government Estimate.").  The caselaw consistently supports a contracting officer's discretion in how it conducts discussions, particularly those regarding price.  *See, e.g.*, *JWK Intern. Corp. v. United States*, 279 F.3d 985, 988 (Fed. Cir. 2002) ("All aspects of the discussions, their subject, breadth, and extent, are within the purview of the contracting officer."); *WorldTravelService*, 49 Fed. Cl. at 439 (determining that advisement that an offeror's prices were "way too high" was sufficient to qualify as meaningful and fair discussions).  Plaintiff was informed *twice* that its proposed price was not in line with the government estimate.  *See* AR 1852, 2767.  Plaintiff could not have asked for clearer guidance that its proposed price was too high.  *See* AR 2767 (referencing specific line items that were "significantly higher" than the government's estimate).

In sum, even assuming arguendo that NIST was required to conduct discussions, to prevail on this claim, Plaintiff had to show that its discussions with NIST were misleading or not meaningful.  *Advanced Data Concepts, Inc. v. United States*, 43 Fed. Cl. 410, 422 (1999).  Plaintiff has not met that burden, and the administrative record, in fact, shows the contrary.  Accordingly, the Court grants the government's and Defendant-Intervenor's motions for

---

[4] It appears that proposals were also supposed to be evaluated for price realism, but according to GAO's opinion NIST did not do a price realism analysis.  Facility, B-418743.3 at 4 ("Facility's protest argued that the RFP required the agency to evaluate the proposals for price realism, *which the agency admittedly did not do*.") (emphasis added) (internal citations omitted).  Given that Plaintiff's principal argument here is about price, it is puzzling that Plaintiff raised but then abandoned its price realism argument before GAO (and did not even raise it in this Court).  *Compare id*. at 4-5 ("If Facility had prevailed on [its price realism] argument, our Office would have likely recommend [sic] that the agency reevaluate proposals in accordance with the terms of the solicitation and make a new best-value decision.") *with id*. at 5 ("[W]e dismiss as abandoned . . . the argument that the RFP required proposals to be evaluated for price realism.").

judgment on the administrative record as to the adequacy of discussions regarding Plaintiff's price proposal.

**C.      Plaintiff Lacks Standing to Challenge the Alleged Improper Technical and Past Performance Evaluations of Defendant-Intervenor and Itself**

As with its adequacy of discussions argument, Plaintiff failed to draw upon, or offer any citation to, the administrative record for its claims related to the improper evaluation of Defendant-Intervenor's proposal or its own proposal.  The Court would nonetheless address the merits of this argument, but, unlike with Plaintiff's adequacy of discussions argument, Plaintiff has failed to establish that it has standing to challenge the technical and past performance evaluations.

Because Plaintiff was unsuccessful on its meaningful price discussions challenge, it lacks the required standing to challenge alleged issues with the technical and past performance evaluations.  *See, e.g., Wis. Physicians Serv. Ins. Corp. v. United States*, 151 Fed. Cl. 22, 30-31 (2020) ("If, however, an offeror's proposal is eliminated from the competition . . . the offeror may only have standing to challenge the agency's ruling on its elimination—if the elimination was proper, the protestor will lack standing to challenge subsequent alleged errors in the procurement such as the agency's choice of the awardee among the finalists for contract award.") (collecting cases).  At most, Plaintiff carried (albeit by the thinnest of margins) its burden to establish that it has standing to challenge the adequacy of the price-related discussions.  But having failed to prevail on its meaningful discussions' argument, Plaintiff—fourth in line for award because of its price proposal—lacks standing to challenge other aspects of the competition.

This is because Plaintiff failed to offer any meaningful challenge to NIST's evaluations of the two other technically acceptable proposals that were ranked directly ahead of it.  *United States v. Int'l Bus. Machs. Corp.*, 892 F.2d 1006, 1010-12 (Fed. Cir. 1989) (holding that an unsuccessful bidder ranked fourth lowest who did not challenge "either the solicitation itself or the eligibility of the intervening bidders" did not have standing); *HVF West, LLC v. United States*, 846 F. App'x 896, 899 (Fed. Cir. 2021) ("[A] least favored price-ranked bidder has standing only upon mounting a credible challenge to the technical acceptability of the better price-ranked bidders in line and in front of the protesting party."); AR 3612 (ranking [Offeror No. 2] and [Offeror No. 3] as second and third, respectively).  However, to have a substantial chance of award, and thus the direct economic interest necessary for standing, Plaintiff had to make a credible challenge not only to Defendant-Intervenor's proposal but to the other two proposals evaluated ahead of it as well.  Yet, Plaintiff does not even mention either of the two offerors ranked directly ahead of it, much less mount a credible, non-speculative challenge to NIST's evaluation of their technical merit or overall value to the government.

By failing to challenge the evaluations of the two other offerors' proposals (and failing in its price-related challenge as discussed above), Plaintiff cannot establish that it had a substantial chance of winning the award and, therefore, standing to challenge any aspect of the technical and past performance evaluations.  *See Zeidman Techs., Inc. v. United States*, 144 Fed. Cl. 294, 300 (2019) ("Here, ten companies, including plaintiff, submitted Phase I proposals . . . , and their

8

proposals are part of the AR.  Despite access to this information, plaintiff makes no significant or systematic effort to compare or distinguish its proposal from the others."); *cf. Bluewater Mgmt. Grp., LLC v. United States*, 150 Fed. Cl. 588, 608-09 (2020) (holding plaintiff substantively alleged, with detailed reference to specific contract requirements, that two lower-priced bidders had non-compliant or deficient bids, which was sufficient to establish that it had a substantial chance of winning the contract); *Hyperion, Inc. v. United States*, 115 Fed. Cl. 541, 550 (2014) (holding plaintiff had standing because it adequately alleged that three lower-priced proposals were improperly considered technically acceptable).

In other words, even if Plaintiff could establish the errors it alleges in NIST's evaluations of its proposal and Defendant-Intervenor's proposal, its protest would still fail because it did not even attempt to establish that it would prevail over the two intervening offerors.  Accordingly, on this count, Plaintiff lacks standing.

**D.    Plaintiff Failed Even to Attempt to Meet its Burden to Demonstrate That It Was Entitled to Injunctive Relief**

The Court will also address Plaintiff's request for the extraordinary remedy of injunctive relief in approximately the same number of words that Plaintiff used to argue for such relief.  To say that Plaintiff *argued* that injunctive relief would be appropriate is an overstatement, as Plaintiff merely recited the elements of the test for injunctive relief and stated—with effectively no analysis or factual support—that those burdens are met.  *See generally* ECF No. 19 at 11-12. As stated in the Court's order of January 13, 2022, Plaintiff failed to meet its heavy burden to show that the "drastic and extraordinary remedy" of injunctive relief is warranted.  *Intel Corp. v. ULSI Sys. Tech., Inc.*, 995 F.2d 1566, 1568 (Fed. Cir. 1993).  Thus, even if Plaintiff had carried its burden on the merits, the Court would be unable to grant injunctive relief given Plaintiff's lack of any real advocacy for such relief.

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion for judgment on the administrative record is **DENIED**.  The government's motion to dismiss is **GRANTED** with respect to Count I of Plaintiff's complaint, and the government's and Defendant-Intervenor's motions for judgment on the administrative record are **GRANTED** with respect to Count II of the complaint.  The Clerk shall enter judgment accordingly.

In addition, the parties shall confer to determine agreed-to proposed redactions to this opinion.  On or before **February 3, 2022**, the parties shall file a joint status report indicating their agreement on proposed redactions, attaching a copy of those pages of the Court's opinion that contain proposed redactions, with all proposed redactions clearly indicated.

**IT IS SO ORDERED**.

s/ Zachary N. Somers
ZACHARY N. SOMERS
Judge